**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

HECTOR G.,[1]

                        Plaintiff,
       v.                                                           **DECISION AND ORDER**
                                                                            21-CV-1164-RJA
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

      Hector G. ("Plaintiff") brings this action seeking review of the Commissioner of Social Security's final decision that denied his applications for Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act ("SSA"), and Supplemental Security Income ("SSI"), under Title XVI of the SSA. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The parties filed cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Dkt. 8, 9. Plaintiff also filed a response brief. Dkt. 11.

      The Court assumes the parties' familiarity with the administrative record, the parties' arguments, and the standard of review, which the Court refers to only as necessary. *See Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998) (summarizing the standard of review and the five-step sequential evaluation process that Administrative Law Judges ["ALJs"] must use to make disability determinations); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122-23 (2d Cir. 2012) (same). For the reasons stated below,

---

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by his first name and last initial, in accordance with this Court's Standing Order issued November 18, 2020.

the Commissioner's decision is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this Decision and Order.

## I.     PROCEDURAL HISTORY

Plaintiff alleges disability beginning on April 20, 2017. Tr. 234.[2] He filed an application for DIB on August 2, 2018. Tr. 15, 234-35. Plaintiff was last insured on March 31, 2018. Tr. 140. He also filed an application for SSI on November 19, 2019. Tr. 15, 236-37. The applications for DIB and SSI were both initially denied on June 24, 2019, and upon reconsideration on July 22, 2019. Tr. 15, 95-106,108-19.

Plaintiff requested an administrative hearing on July 25, 2019. Tr. 120-21. On May 21, 2020, a hearing was held at which Plaintiff appeared with his attorney and testified via teleconference; a Vocational Expert ("VE"), Joseph Atkinson, also testified on this date. Tr. 52-75. On December 1, 2020, Plaintiff appeared with his attorney via teleconference at a supplemental hearing; a Medical Expert ("ME"), Steven Goldstein (a neurologist); and a VE, Harris Rowzie, also testified. Tr. 31-51.  The case was subsequently reassigned to ALJ Mark Solomon, who reviewed the case and issued an unfavorable decision on March 17, 2021, finding Plaintiff not disabled. Tr. 15-25.

### A.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application. Tr. 18. At step two, the ALJ determined that Plaintiff had severe impairments of: (1) lower back pain, status post laminectomy; (2) a history of asthma; (3) depression; and (4) migraine headaches. Tr. 18. The ALJ also noted that

---

[2] "Tr. __" refers to pages of the certified administrative transcript at Dkt.6, specifically the pagination located at the bottom, right-hand corner of the transcript.

Plaintiff had the following non-severe impairments: sleep apnea; mild obesity; gastroesophageal reflux disease; diabetes mellitus[3]; hypertension; and a history of substance abuse. Tr. 18. At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 18. He determined Plaintiff's Residual Functional Capacity ("RFC") to be at the light work level,[4] with additional limitations:

> [H]e can occasionally bend, kneel, squat or crawl; he can only occasionally operate foot controls or pedals; he would need to avoid respiratory irritants; he is limited to simple, low stress work which does not require decisions other than simple workplace judgments; he would be limited to work with no quota or high production or other tasks that require a specific production rate; he can have less than occasional changes in his work routine; and he would be off task 10% of the workday and absent one day per month. Tr. 20.

At step four, the ALJ found Plaintiff unable to perform his past relevant work as a delivery driver. Tr. 24. Then, at step five, the ALJ identified other jobs in significant numbers in the national economy that would be suitable for Plaintiff to perform. Tr. 24. Therefore, ALJ found Plaintiff not disabled within the meaning of the SSA. Tr. 25.

---

[3] Plaintiff has also complained of diabetic neuropathy. Tr. 307, 329, 360, 467, 468. Diabetic neuropathy, a complication of diabetes, results in: "…permanent nerve damage. The most common types of diabetic neuropathy are peripheral and autonomic. It can affect every organ system in the body and produce abnormal function or a loss of sensation in the affected nerve area distribution." Social Security Ruling ("SSR") 14-2p, 2014 WL 2472008 at *4 (S.S.A. June 2, 2014). Notably, the ALJ does not mention Plaintiff's diabetic neuropathy as either a severe or non-severe impairment.

[4] Agency regulations define light work as follows: "Light work involves lifting no more than 20 pounds at a time and frequently lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

### B. Appeals Council Review

On April 6, 2021, Plaintiff requested review by the Appeals Council. Tr. 228-31. On September 17, 2021, the Appeals Council denied his request for review. Tr. 1-6. The Commissioner thus adopted the ALJ's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. This action seeks review of the Commissioner's final decision.

## II.   DISCUSSION

### A. Standard of Review

The Court reviews the record to determine whether the Commissioner applied the correct legal standards and whether substantial evidence supports the Commissioner's final decision. 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### B. Development of the Record

In the instant case, the issue is whether the ALJ had substantial evidence to support his decision denying disability coverage. Plaintiff contends that the ALJ's decision was unsupported by substantial evidence because: (1) the ALJ relied on his lay interpretation to form the RFC; (2) the RFC is highly specific; and (3) the ALJ did not develop the record. Dkt. 8. Specifically, Plaintiff argues that the ALJ did not rely on medical opinions or provide function-by-function assessments to construct the RFC, but rather substituted his own lay interpretation of the raw medical evidence to formulate the RFC, including highly specific limitations that require medical opinion evidence. Dkt. 8.

Defendant responds that the ALJ's decision was supported by substantial evidence and should be affirmed as a reasonable factfinder could have deemed Plaintiff not disabled based on his unremarkable physical as well as cognitive findings. Dkt. 9. Defendant argues that the highly specific 10% off-task limitation prescribed by the RFC was sufficiently tethered to medical evidence as the ALJ considered treatment notes, opinions, prior administrative findings, and Plaintiff's own statements. Dkt. 9. *See Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) (summary order). Alternatively, Defendant argues that the absence of a medical opinion about the amount of time Plaintiff would be off task suggests that medical providers did not believe Plaintiff required such accommodation. Dkt. 9. Finally, the Commissioner argues that Plaintiff had the duty to disclose additional related evidence, so the Court should reject his request for remand to develop the record with a supplemental medical opinion. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a) ("you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)").

The Court finds that the ALJ's evaluation of the record medical opinions created a gap requiring remand. The ALJ found the medical expert's testimony unpersuasive due to the expert's discomfort and ultimate refusal to opine at the hearing. Tr. 23. Similarly, the ALJ found the state agency review physicians' assessments to be unpersuasive as they indicated there was insufficient evidence in the record on which to render an opinion. Tr. 23. Moreover, the record contains no medical opinions from treating doctors or from a Consultative Examiner ("CE"). Therefore, the ALJ's rejection of opinions created an evidentiary gap in the record requiring remand. *Miller o/b/o A.J.S. v. Comm'r*, No. 18-CV-450, 2019 WL 3780085, *4, 2019 U.S. Dist. LEXIS 135623, *10

(W.D.N.Y. Aug. 12, 2019) (citations omitted) (stating "whether the ALJ met the duty to develop the record is a threshold question before determination of whether the ALJ's conclusions are supported by substantial evidence").

Here, the ALJ's decision did not rely on any medical opinions, as he disregarded the record opinions as unpersuasive. Tr. 23. First, the ALJ rejected the opinion of the testifying medical expert, Dr. Goldstein. While Dr. Goldstein initially opined that Plaintiff would be capable of work at the light exertional level, he stated thereafter that he was uncomfortable testifying based on the record before him. Tr. 23. Due Dr. Goldstein's refusal to render an opinion, the ALJ excluded his testimony from consideration. Tr. 23. Second, the ALJ rejected the opinions of the state medical experts, G. Wang and D. Brauer, finding them unpersuasive as well. Tr. 76-82, 84-90. Both state medical experts indicated that there was insufficient evidence in the record to render an assessment. Tr. 23. Third, the ALJ failed to request medical source statements, other medical opinions, or consultative examinations to establish Plaintiff's functional limitations. Without reliance on such evidence, the ALJ necessarily relied on his own lay opinion to determine Plaintiff's RFC, mandating remand. *See Judd v. Berryhill*, No. 17-CV-1188, 2018 WL 6321391, *7, 2018 U.S. Dist. LEXIS 205177, *23 (W.D.N.Y. Dec. 4, 2018).

1. ***Plaintiff's Physical RFC***

The ALJ erred in determining the physical portion of Plaintiff's RFC. Without the opinions of medical experts, the record lacks any opinion from a medical source assessing Plaintiff's physical limitations. "[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."

*Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, *21, 2015 U.S. Dist. LEXIS 27804, *54 (W.D.N.Y. Mar. 6, 2015). While the Commissioner is empowered to make RFC determinations, "[w]here the medical findings in the record merely diagnose claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the Commissioner generally "may not make the connection himself." *Id.*

After finding none of the medical opinion evidence persuasive, the ALJ concluded that Plaintiff could perform light work with additional limitations. Tr. 20. It is unclear how the ALJ arrived at his RFC determination "without a medical opinion or consultative examination report to assist him in correlating the medical treatment notes into an assessment of Plaintiff's physical capacity for work-related activities." *Judd*, 2018 WL 6321391 at *7. When the ALJ formulates the RFC without a medical opinion, he must "provide a function-by-function analysis of [the claimant]'s work-related capacity." *Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 WL3372964, *4, 2018 U.S. Dist. LEXIS 115388, *9 (W.D.N.Y. July 11, 2018) (citation omitted). However, the ALJ failed to set forth a function-by-function analysis here.

Moreover, an ALJ may support their RFC determination based on the contemporaneous treatment notes of a medical provider only if those notes provide information relevant to a claimant's ability to perform sustained gainful employment. *See Monroe v. Comm'r. of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (summary order). Here, the treatment notes present raw medical data that does not address how Plaintiff's impairments affect his physical ability to perform work-related functions. As

7

such, the ALJ's physical RFC is not supported by substantial evidence. *See Wilson*, 2015 WL 1003933 at *21 (citations omitted).

Correspondingly, the ALJ's interpretation of Plaintiff's raw medical data failed to account for all of Plaintiff's limiting physical conditions. For example, the ALJ did not account for or otherwise mention Plaintiff's diabetic neuropathy. Instead, the ALJ rendered a decision which only included diabetes mellitus in his evaluation, and he determined it to be a non-severe impairment. However, the record repeatedly shows that Plaintiff suffered from diabetic neuropathy. Tr. 307, 329, 360, 467, 468. Likewise, it appears that the ALJ improperly discounted the severity of Plaintiff's sleep apnea condition. The ALJ classified Plaintiff's sleep apnea as a non-severe impairment, whereas he classified Plaintiff's inactive asthma as severe. Tr. 18. He reached this conclusion despite the record showing that at least one medical provider opined in his treatment notes that Plaintiff's sleep apnea likely contributed to his headaches and hypertension. Tr. 310. Further, treatment notes in the record indicate that Plaintiff's CPAP device could not be tolerated and was therefore not effectively treating his sleep apnea. Tr. 574. In fact, Plaintiff's condition was deemed serious enough that he reportedly underwent desensitization treatment to increase the likelihood that he would be able to utilize his CPAP. Tr. 573, 577.  Accordingly, the ALJ failed to adequately explain his determination that Plaintiff's sleep apnea was a non-severe impairment.

### 2. *Plaintiff's Mental RFC*

The ALJ also erred in determining the mental portion of Plaintiff's RFC. At step two, Plaintiff was determined to have severe mental impairments, namely, depression and migraine headaches. Tr. 18. While the ALJ discussed Plaintiff's mental limitations,

he did not explicitly address Plaintiff's depression, but instead stated that Plaintiff's mental status examinations were within normal limits. Tr. 19. However, the ALJ limited Plaintiff to low production work due to his anxiety (a condition the ALJ did not find either severe or non-severe) and headaches. Tr. 19. The ALJ also acknowledged that Plaintiff reported hearing voices, but discounted his claim finding that the voices did not affect his ability to concentrate. Tr. 19. The ALJ specifically considered Plaintiff's mental health provider's treatment notes, which documented that medication was not alleviating auditory hallucinations and that Plaintiff continued to experience some tactile and visual hallucinations as well. Tr. 562. The mental health provider also notated that Plaintiff relayed feelings of paranoia in which he feels like someone is watching him in his room at night. Tr. 570. Nevertheless, despite these recurring episodes, the ALJ found Plaintiff's concentration intact. Tr. 19.

The ALJ found Plaintiff could perform "simple, low stress work which does not require decisions other than simple workplace judgments;" that Plaintiff was only capable of having "occasional changes in his work routine;" and that Plaintiff would be "off task 10% of the workday." Tr. 20. However, it is unclear how the ALJ determined these limitations, as he did not rely on any medical opinion evidence. While there are some instances in which an ALJ may rely on "common sense" determinations to formulate an RFC, the ALJ may not do so where severe mental impairments exist. *See Balistrieri v. Saul*, No. 19-CV-293-MJR, 2020 WL 2847501, *5, 2020 U.S. Dist. LEXIS 96775, *16-17 (W.D.N.Y. June 2, 2020) (citing *Jones v. Colvin*, No. 14-CV-556S, 2015 WL 5126151, *4, 2015 U.S. Dist. LEXIS 116298, *10 (W.D.N.Y. Sept. 1, 2015) ("Here, because the ALJ concluded that Plaintiff's depression was significant enough to

9

constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consultative examiner quantifying Plaintiff's mental limitations rendered the record incomplete.").

It is well-established that common sense judgments do not extend to mental limitations, which are "highly complex and individualized." *Dye v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 386, 392-93 (W.D.N.Y. 2019) (remanding where an ALJ made an RFC determination without opinion evidence, because mental impairments are by their nature "highly complex and individualized"). Furthermore, although the ALJ accounted for Plaintiff's depression, he failed reference Plaintiff's hallucinations and psychosis. Clearly those symptoms require the ALJ to rely on a formal medical opinion to generate his mental RFC. Tr. 344, 383, 387, 554, 625, 627.

Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court unable to conduct a meaningful review. Remand is warranted because the ALJ failed to meet his affirmative duty to develop the record. Accordingly, the ALJ is directed to obtain medical opinions regarding Plaintiff's physical and mental limitations during the pertinent time period, and/or independent functional capacity examinations. In developing Plaintiff's physical RFC, the ALJ should also expressly consider Plaintiff's diabetic neuropathy and sleep apnea. Likewise, in developing Plaintiff's mental RFC, the ALJ should consult a medical opinion to evaluate Plaintiff's depression and any other psychological impairments, including hallucinations.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is GRANTED in part, insofar as remand was requested, the Commissioner's

cross-motion for similar relief and motion in opposition (Dkt. 9) is DENIED, and the Commissioner's final decision is VACATED, and the case is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court shall take all steps necessary to enter judgment and close the case.

**IT IS SO ORDERED.**

       _s/Richard J. Arcara_____
       HONORABLE RICHARD J. ARCARA
       UNITED STATES DISTRICT COURT

Dated:  July 12, 2023
       Buffalo, New York